UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ORLANDO GOMEZ,

                Plaintiff,

vs.                                  Case No.  2:10-cv-708-FtM-29DNF

TST DAVIS,

                Defendant.
_____

## ORDER OF DISMISSAL

This matter comes before the Court upon periodic review of the file. Orlando Gomez, a *pro se* plaintiff who is currently civilly detained pursuant to the Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act[1] at the Florida Civil Commitment Center, initiated this action by filing a Civil Rights Complaint (Doc. #1, Complaint) pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *in forma pauperis* (Doc. #4) in this action.

**I.**

Despite Plaintiff's non-prisoner status, the Court is required to review the complaint to determine whether the complaint is frivolous, malicious or fails to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).[2] In essence, § 1915(e)(2) is a screening

---

[1] The Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act (hereinafter "SVP Act") is located at Fla. Stat. §§ 394.910-394.913.

[2] The Court recognizes that certain portions of the Prison Litigation Reform Act are not applicable to Plaintiff as a civil

(continued...)

process, to be applied *sua sponte* and at any time during the proceedings. The Court, nonetheless, must read Plaintiff's *pro se* allegations in a liberal fashion. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

A complaint filed *in forma pauperis* which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Rather, the test for granting a § 1915 dismissal is whether the claim lacks arguable merit either in law or fact. Id. at 325; Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002); Bilal v. Driver, 251 F.3d 1346 (11th Cir. 2001). Additionally, § 1915 requires dismissal when the legal theories advanced are "indisputably meritless," Nietzke, 490 U.S. at 327; when the claims rely on factual allegations which are "clearly baseless" Denton v. Hernandez, 504 U.S. 25, 32 (1992); or, when it appears that the plaintiff has little or no chance of success. Bilal, 251 F.3d at 1349. A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Fed. R. Civ. P.

---

[2](...continued)
detainee. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The United States Court of Appeals for the Eleventh Circuit previously found that a district court did not err by dismissing a complaint filed by a civil detainee for failure to state a claim under the *in forma pauperis* statute, 28 U.S.C. § 1915 (e)(2)(B). Id. at 1260. Other courts have also found that section 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001).

12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1489-90 (11th Cir. 1997).  Dismissal for failure to state a claim is appropriate when the facts as pleaded do not state a claim for relief that is "plausible on its face."  Ashcroft v. Iqbal, ____ U.S. _____, 129 S. Ct. 1937, 1949 (2009)(internal citations and quotations omitted).

## II.

The Complaint names TST Davis as the sole Defendant.  Complaint at 1-2.  The only allegations set forth in the Complaint are as follows.  Plaintiff claims that his Fourth and Fourteenth Amendment rights protected under the United States Constitution were violated when Defendant Davis searched his "person, personal property [,] and papers."  Id. at 2.  In support, Plaintiff states that Defendant Davis conducted a pat-down search, placed his hands in Plaintiff's pockets, read Plaintiff's personal papers, and "seized" Plaintiff's personal property.  Id.  Plaintiff states that Davis "acted without a search warrant, probable cause[,] or [a] reasonable suspicion."  Id.  As a remedy, Plaintiff seeks "compensatory and punitive damages," 90% of which to go to the Center for Missing and Exploited Children.  Id.

**III.**

As previously stated, Plaintiff is civilly detained at the FCCC. By way of background, the State of Florida enacted the SVP Act by which a person determined to be a sexually violent predator[3] is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2). The SVP Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002). See also Kansas v. Hendricks, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive).[4] Thus, involuntary commitment of sexually violent predators under the SVP Act is

---

[3] A "sexually violent predator" is defined by the Act as any person who:

(a) Has been convicted of a sexually violent offense; and

(b) Suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for log-term control, care, and treatment.

Section 394.912(10), Fla. Stat. (2008).

[4] "Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects. See Kan. Stat. Ann. § 59-29a01-a20 (Supp. 2001)." Westerheide, 831 So. 2d at 99 n.6.

accomplished by a civil, rather than a criminal, proceeding.  In its statement of "findings and intent," the State legislature said that the SVP Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§ 394.451- § 394.4789, Fla. Stat.)."  Fla. Stat. § 394.910.

A person who is civilly committed is in a position analogous to a criminally confined prisoner.  See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001)(stating that "the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments").  An individual who has been involuntarily civilly committed, however, has liberty interests under the Due Process Clause of the Fourteenth Amendment that "require the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint."  Youngberg v. Romeo, 457 U.S. 307, 319 (1982).  Further, as civil detainees, FCCC residents are afforded a higher standard of care than those who are criminally committed.  See id. at 321-322; Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996); Lavender v. Kearney, 206 F. App'x 860 (11th Cir. 2006).  Indeed, the Eleventh Circuit Court of Appeals has held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose

conditions of confinement are designed to punish." <u>Dolihite</u>, 74 F.3d at 1041 (internal citations and quotations omitted).

### A. Right to Privacy

The United States Supreme Court has determined that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." <u>Hudson v. Palmer</u>, 468 U.S. 517, 527-28 (1984). While this Circuit has determined that prisoners "retain a *limited* constitutional right to bodily privacy" this right must be evaluated on a "case-by-case basis." <u>Fortner v. Thomas</u>, 983 F.2d 1024, 1030 (11th Cir. 1993)(emphasis added); <u>Boxer X v. Harris</u>, 437 F.3d 1107 (11th Cir. 2006). This right to privacy is subject to further limitations that are reasonably related to "legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).

The Court recognizes that Plaintiff, although not a "prisoner," has been confined to a "secure facility" pursuant to the SVP Act upon a probable cause determination that Plaintiff meets the statutory definition of a sexually violent predator, due to his previous state conviction for a sexually violent offense. <u>See</u> Fla. Stat. § 394.910. In other words, Plaintiff has been involuntarily civilly committed to the FCCC. The same concerns raised in <u>Hudson</u> are at issue in the instant case. <u>See generally</u> <u>Hudson</u>, 468 U.S. at 526-528 (discussing security concerns in place

of involuntary confinement). Thus, the dormitory room to which Plaintiff is assigned at the FCCC, albeit not a cell, is not protected by the Fourth Amendment. Id. at 517. Plaintiff cannot reasonably argue that he has a legitimate "expectation of privacy" in his open bay dorm. Therefore, it is not a constitutional violation for the Defendant to search Plaintiff's FCCC room and person. Shaarbay v. Palm Beach County Jail, 350 F. App'x 359, 362 (11th Cir. 2009)(citing Padgett v. Donald, 401 F.3d 1273, 1278 (11th Cir. 2005)(citing Hudson, 468 U.S. 517, 525-26 (1984)).

As this Court has previously ruled, imposing a blanket prohibition against searches of an FCCC resident's living area is inherently inconsistent with the facility's needs of ensuring security and implementing rules and regulations. See Block v. Rutherford, 468 U.S. 576 (1984); Marsh v. Dep't of Children & Families, Case No. 2:03-cv-162-FtM-29SPC, 2006 WL 2644917 (M.D. Fla. Sept. 14, 2006), affirmed other grounds, 259 F. App'x. 201 (11th Cir. 2007)(finding FCCC resident has no Fourth Amendment right to protections from searches in his FCCC room). Other courts when confronted with similar facts agree with this Court on this matter. See Riley v. Doyle, Case No. 06-C-574-C, 2006 WL 2947453 (W.D. Wis. Oct. 16, 2006); Banda v. Corzine, Case No. 07-4508-(WJM), 2007 WL 3243917 (D.N.J. Nov. 1, 2007). Consequently, the Court finds that the Complaint fails to adequately state a claim with respect to Plaintiff's right to privacy from searches.

### B. Seizure of Property

According to the Complaint, Plaintiff also alleges that Defendant Davis "seized" his "personal property." Complaint at 2. The alleged seizure of Plaintiff's property, whether done negligently, intentionally, or recklessly, does not present a constitutional violation. See Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part, Daniels v. Williams, 474 U.S. 327, 330-31 (1986)(overruling Parratt to extent that it states that mere lack of due care by a state official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment); Hudson, 468 U.S. at 517. "Under the Parratt-Hudson doctrine, a random and unauthorized deprivation does not violate procedural due process if the state provides an adequate post-deprivation remedy." Carcamo v. Miami-Dade County, 375 F.3d 1104, 1105 (11th Cir. 2004) (citing Zinermon v. Burch, 494 U.S. 113, 132 (1990)).

Plaintiff has not alleged that Florida law has provided an inadequate post-deprivation remedy. See Complaint. Under the law of Florida, "law enforcement officers may be liable for conversion" for the seizure or retention of personal property. Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009)(quotations omitted). Accordingly, Plaintiff is not entitled to relief under § 1983 based on the seizure of his property claim because Plaintiff has adequate remedies in the Florida courts.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  Plaintiff's Complaint (Doc. #1) is **DISMISSED without prejudice** pursuant to § 1915(e)(2)(b)(ii).

2.  The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, on this __21st__ day of March, 2011.

```
                                 _____
                                 JOHN E. STEELE
                                 United States District Judge
```

SA: alj
Copies: All Parties of Record